UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN MANN, ERNEST JOSEPH
McCULLA and MARY MADONNA
McCULLA, as TRUSTEES FOR THE
JONES-McCULLA FAMILY TRUST
OF 2001,

      Plaintiffs,

vs.                            Case No.:  3:08-CV-297-RS-EMT

ADACHE GROUP ARCHITECTS, INC.,
HATCH MOTT MACDONALD FLORIDA,
LLC, ISLAND RESORTS DEVELOPMENT,
INC., PORTOFINO MASTER HOMEOWNERS'
ASSOCIATION, INC., PORTOFINO
TOWER TWO HOMEOWNERS
ASSOCIATION AT PENSACOLA
BEACH, INC., and W.G. YATES &
SONS CONSTRUCTION COMPANY,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiffs sue Defendants and state:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332 because of the complete diversity of citizenship between the Plaintiffs and

all Defendants, and because the matter in controversy exceeds the sum of $75,000.00,

exclusive of interest and costs.

2.     Venue in this Court is proper under 28 U.S.C.  § 1391(a) because a

substantial portion of the events or omissions giving rise to the claims asserted in the

1

Complaint occurred within this judicial district and because the property that is the subject of this action is located in this judicial district.

3.     Plaintiff John Mann ("Mann") is a citizen of the United States and a resident of Louisiana.  At all times relevant to the events described in this complaint, Mann was a claimant as this term is defined in Florida Statutes § 558.002(3).  Mann is also a member of the Associations referenced in this complaint and has standing to maintain actions for construction or defects or deficiencies in the common elements of the condominium pursuant to Florida Statutes Section 718.111(3).

4.     Plaintiffs Ernest Joseph McCulla and Mary Madonna McCulla, as Trustees for the Jones-McCulla Family Trust of 2001 ("McCulla Trust)" are citizens of the United States and residents of Louisiana.  At all times relevant to the events described in this complaint, the McCulla Trust was a claimant as this term is defined in Florida Statutes § 558.002(3).  McCulla Trust is also a member of the Associations referenced in this complaint and has standing to maintain actions for construction or defects or deficiencies in the common elements of the condominium pursuant to Florida Statutes Section 718.111(3).

5.     Defendant Adache Group Architects, Inc. ("Adache") is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Broward County, Florida.  At all times relevant to the events described in this complaint, Adache was a licensed Florida architect and a design professional as this term is defined in Florida Statutes § 558.002(6).

6.     Defendant Hatch Mott MacDonald Florida, LLC ("Hatch") is a limited liability company organized and existing under the laws of the State of Florida with its

2

principal place of business in Escambia County, Florida.  At all times relevant to the events described in this complaint, Hatch was a licensed Florida architect, engineer and surveyor and a design professional as this term is defined in Florida Statutes § 558.002(6).

7.      Defendant Island Resorts Development, Inc. ("Island Resorts") is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Escambia County, Florida.  At all times relevant to the events described in this complaint, Island Resorts was a contractor as this term is defined in Florida Statutes  § 558.002(5).

8.      Defendant Portofino Master Homeowners' Association, Inc. ("Master") is a not-for-profit corporation and condominium organized and existing under the laws of the State of Florida with its principal place in Escambia County, Florida.   The Association was formed and exists for the purposes set forth in the Declaration of Condominium of the Association.

9.      Defendant Portofino Tower Two Homeowners Association at Pensacola Beach, Inc. ("Association") is a not-for-profit corporation and condominium association organized and existing under the laws of the State of Florida with its principal place in Escambia County, Florida.  The Association was formed and exists for the purposes set forth in the Declaration of Condominium of the Association.

10.      Defendant W.G. Yates & Sons Construction Company ("Yates") is a construction company, based in Mississippi, which transacts business and maintains offices in Escambia County, Florida.  At all times relevant to the events described in this complaint, Yates was a contractor as this term is defined in Florida Statutes § 558.002(5).

11.     Plaintiffs have performed or otherwise satisfied or been excused from performing or satisfying all conditions precedent to prosecuting this action.

## FACTUAL BACKGROUND

### 2004

12.     On August 9, 2004, Mann[1] purchased a three bedroom, fifth floor, terrace-level condominium unit ("unit") in Portofino Tower Two.  Mann purchased the unit to enjoy as a vacation home and as an investment property that he intended to rent and resell for a profit.   Portofino Island Resort and Spa includes five high-rise residential condominiums.

13.     The terrace-level units in Portofino Tower Two and other towers are distinguished from the other units in the condominium building because they are surrounded on three sides by a wrap-around balcony intended to add value to these units.

14.     The unit purchased by the Plaintiffs, and common elements surrounding the unit, were designed, developed, constructed, repaired, and/or remodeled by Adache, Hatch, Island Resorts and Yates.

15.     At the time Mann purchased the unit there were no readily observable defects with the property.  After Mann closed on the sale, he discovered that whenever it rained water ponded on the terrace, water stains were observed on the base trim and gypsum wallboard, and water penetrated at the base of the sliding glass doors in the guest and master bedrooms.  Mr. Mann also noted high humidity in the unit and later noticed during winter months the floors were uncomfortably cold.

---

[1] On or about December 28, 2006, Mann transferred some of his interest in the Unit to his in-law's Trust referred to as McCulla Trust.

4

16.     Mr. Mann immediately notified Island Resorts, Master, Association and Yates of the above referenced problems.

17.     Hurricane Ivan struck the building in September, 2004.

16.     After Hurricane Ivan, Island Resorts, Master, Association, and Yates performed an inspection of Plaintiffs' unit, common elements surrounding Plaintiffs' unit, other units in the condominium and other condominium common elements.

17.     They noted significant damage to the condominium and Island Resorts, Master and Association hired Yates to help with the drying out process and hired other architects, building consultants and engineers to perform moisture testing on all of the units and determine how much drywall was damaged, what carpet needed to be removed from the units, and to perform structural inspections of each tower.

18.     Island Resorts, Master, Association and Yates undertook the following actions for the benefit of Plaintiffs and other unit owners:  assessing the damages, preparing damage assessment reports, removing damaged property, discussing and approving special assessments, preparing and submitting insurance claims, and repairing damage and deficiencies to individual units and the common elements.

19.     Specifically, with regard to the Plaintiffs' unit, Island Resorts, Master, Association and Yates noted water and mold damage at the baseboards of the guest and master bedrooms.  Upon removing the water-damaged wallboard and trim, they noted that the steel framing was rusted.  They also noted moisture intrusion, penetration into the EIFS, and damage to the sealants surrounding Plaintiffs' unit.

20.     Island Resorts, Master, Association and Yates continued to undertake a process to attempt to repair and correct the damage to Plaintiffs' unit, common elements

5

surrounding Plaintiffs' unit and the rest of the common elements of the condominium to protect the interest of Plaintiffs, other unit owners, and their own interests.

**2005**

21.     In February, 2005, Master and Association met and decided to have Yates provide a detailed synopsis of the estimated costs of damage from Hurricane Ivan.

22.     On February 27, 2005, a Maintenance Work Order was performed by Island Resorts, Master, Association and Yates on Plaintiffs' unit and microban was sprayed on a rug and baseboards.   However, on March 1, 2005, Mann reported a considerable amount of mold in the master bedroom floor near the sliding glass door. There was mold on the seagrass rug and the floor under the rug was wet.  The baseboards running under the sliding glass door were water stained with evidence of mold.

23.     On April 19, 2005, Yates inspected Plaintiffs' unit again.

24.     In May, 2005, Island Resorts, Association and Yates obtained a mold report for Plaintiffs' unit which indicated a very high concentration of mold.

25.     Hurricane Dennis struck the condominium in July, 2005.

26.     On or about July 18, 2005, Island Resorts, Master, Association and Yates obtained an inspection, testing and moisture analysis report for Plaintiffs' unit which reported significant moisture intrusion and made recommended remedies.

27.     Initial inspection notes dated July 22, 2005 from Island Resorts, Master, Association and Yates again indicated that Plaintiffs' unit had water intrusion in the master bedroom, huge wet throw rug taken to balcony, and noted that the base was removed, drywall cut, area rugs, dehumidifier installed and microban applied.

28.     On or about August 10, 2005, Island Resorts, Master, Association and Yates, still unable to remedy the problems with Plaintiffs' unit and common elements which they undertook to fix, discussed the water intrusion problems at the terrace level units for towers one and two, remediation recommendations and planned repairs.

29.     On August 12, 2005, Island Resorts, Master and Association wrote to all unit owners and advised them that Yates was the contractor overseeing and undertaking the repairs to the units and common elements attempting to ensure the homeowners that their interests were being protected by Island Resorts, Master, Association and Yates.

30.     In September, 2005, Island Resorts, Master, Association and Yates discussed when the "weep solution" on the fifth floor units would be implemented.

31.     In October, 2005, Island Resorts, Master, Association and Yates performed more inspections of Plaintiffs' unit and other fifth floor units to continue to attempt to repair the problems which still remained unresolved.

32.     In November, 2005, Island Resorts, Master, Association, and Yates completed an inspection of all fifth floor units in towers one, two and three and reported tower two had leaks in most of the fifth floor units including Plaintiffs' which they continue to undertake to repair.

33.     On November 20, 2005, Island Resorts, Master, Association and Yates obtained an Inspection, Testing and Analysis Report for the doors, windows and railings for tower two.

**2006**

34.     On or about February 2, 2006, Island Resorts, Master, Association and Yates yet again identified water intrusion in the fifth floor units and that the balconies

7

were not draining properly, Plaintiffs' unit continued to have water intrusion in the master bedroom in the corner adjacent to unit 509, and through the doors.

35. On February 3, 2006, Master had a Board of Directors' meeting. The Master provided a Hurricane Ivan update discussing the costs, timeframe and upgraded repairs it had undertaken with Island Resorts, Association and Yates. They discussed the fact that Island Resorts, Master, Association and Yates were working on a solution for the terrace level unit owners like Plaintiffs with their architects, building consultants and engineers. They falsely represented that a solution had been found even though it had not.

36. On February 11, 2006, Island Resorts, Master, Association and Yates performed yet another Maintenance Work Order on Plaintiffs' unit. A water leak was reported in the guest and master bedrooms. The base trim board was removed and microban sprayed in each bedroom.

37. Also, on February 11, 2006, Island Resorts, Master, Association and Yates completed another inspection of all level five units. The report indicated leaks, damage to EIFS, and in Plaintiffs' unit, dampness in the guest bedroom, mold, removal of mold and microban applied.

38. On April 15, 2006, Island Resorts, Master, Association and Yates installed caulk and painted the baseboard in Plaintiffs' guest bedroom.

39. On April 22, 2006, the Association had a Board of Directors' Meeting. The Association reported it was in the process of ending its relationship with Yates terminating all work inside the tower due to work promised not being performed. It also discussed work Yates would continue to perform and warranties for said work.

40.     The Plaintiffs received a letter from Mr. Kuman, Director of the Association dated April 28, 2006.  The letter was addressed to terrace level unit owners and provided an update on the ongoing and unresolved water intrusion situation.  It notes that Island Resorts, Master, Association and Yates' building consultants suggested replacing the sliding glass door window unit with the new FBC small missile protection window.

41.     The suggested reasoning for this was due to the "large amount of rain water cascading down the building and the height of the water as it is blown against the exterior slider upon accumulating at the terrace level" allowing a "not so typical" wind-driven rain to blow water through the slider.  Contrary to this assertion, wind-driven rain is anything but "not so typical," but is the norm.

42.     Furthermore, the letter only addresses the guest bedroom sliding glass window because "this specific exterior slider location is the only one that is not protected by the balcony deck above."  Both the guest and master suite bedroom units are unprotected.  If both sliders are converted to fixed windows as suggested, the large terraces opposite each of these bedrooms could only be accessed from the covered balcony which makes this remedy infeasible.  This proposed alteration would block the intended circulation patterns between the bedrooms and terraces of Plaintiffs' unit.

43.     On June 10, 2006, the Association had a Board of Directors' meeting.  The Association falsely represented that the water intrusion problems on the fifth floor balcony units had been resolved when they clearly were not.

9

44.     On September 22, 2006, Island Resorts, Master, Association and Yates prepared a report of outstanding items.  It noted there was water intrusion in Plaintiffs' unit and Yates was responsible for correcting the problem.

45.     On September 23, 2006, the Association had another Board of Directors Meeting.   The Association discussed final resolution with Yates and items under warranty and depletion of insurance receipts from Hurricane Ivan claims.   Master and Association filed insurance claims for damages related to Hurricanes Ivan and Dennis but never included the defects and damages referenced in this matter in those claims.

46.     On October 6, 2006, Island Resorts, Master, Association and Yates inspected the balcony of Plaintiffs' unit.  They noted that the retention ponds at towers one, two and three were changed which could cause too much pressure causing the water to bubble up on the balconies.  They also noted design and maintenance problems with the unit and common elements which caused the significant water intrusion.

**2007**

47.     In January, 2007, Island Resorts, Master, Association and Yates were again informed of water intrusion into Plaintiffs' unit and again inspected Plaintiffs' unit and the balcony.

48.     On February 2, 2007, Island Resorts, Master, Association and Yates performed another inspection of Plaintiffs' unit.

49.     On May 15, 2007, Island Resort, Master, Association and Yates' architect submitted a field report on Plaintiffs' unit.

50.     As referenced above, Island Resorts, Master, Association and Yates undertook an unsuccessful three year process to remedy the problems with Plaintiffs' unit and the surrounding common elements.

51.     They have made numerous unsuccessful attempts to repair the unit and the common elements surrounding the Plaintiffs' unit.  The unit and common elements surrounding the Plaintiffs' unit have consistently been in a state of repair, reconstruction, filled with mold and rusted steel, untenable, unable to be rented and/or marketed for sale, and continues through this filing to be in such a state of disrepair.

52.     Because of their complete ineptitude and inability to rectify these problems, the Plaintiffs retained the services of experts and expended significant monies and resources for these experts.

53.     These experts identified the following defects and deficiencies in their August, 2007 report:

(a).     Grand Salon slider door is inoperable due to improper installation. There are drywall cracks around the slider.  The drywall at the jambs should be removed and replaced.

(b).     Water intrusion is taking place at the two bedrooms through two separate pathways, because water has breached the upper-story cladding and continues to drain to the 5th floor and/or because of improper installation of the sliders.

(c).     Although in high wind events, bowing of the movable panel under wind load might offer an additional pathway for water intrusion into the unit, the main reason why water comes into contact with the base of the sliding glass doors is the design and construction of the bedroom terraces.

The first problem to be corrected is that the available inlet area is undersized.  Assuming the construction drawings reviewed by the expert were the contract drawings and furthermore that there was no change orders, it appears that the Defendants failed to install 11" x 11" deck

11

drains as shown on the construction drawings. The drawings show a drain with a sump embedded in the concrete deck.

What was observed in the field was a 5" drain cover (apparently without an embedded sump although the drain cover was not removed). Proper installation of 11" x 11" deck drains with embedded sumps as specified on the construction drawings should allow water to drain more quickly. If this is not satisfactory, re-design may be required to reduce the hydraulic head. This can be accomplished by a variety of means such as resizing the pipes, using a siphonic drain, increasing the scupper area or redesigning the deck slope.

Although the design of the drainage system meets the requirements of the 1997 Standard Plumbing Code, the design fails to consider the primary use of the deck as a terrace with access provided by a sliding door. The Defendants' proposal to replace the sliders with fixed panel windows emphasizes the incompatibility of the terrace design and use of sliding glass doors.

The primary cause of insufficient drainage appears to be the Defendants' failure to install 11" x 11" deck drains as shown in the construction drawings. The second cause of insufficient drainage is the failure of the Defendants to design a solution better than the minimum requirement of code. This as-built condition does not meet code.

(d).    There is coldness on the floor of the unit due to lack of insulation.

(e).    The mortar joints of the interior tub/shower surrounded next to the guest bedroom are cracked.

54.    The Plaintiffs did not discover any of the facts giving rise to these causes of action until August, 2007 when they obtained the report identified in paragraph 53.

55.    On October 25, 2007, December 4, 2007, January 25, 2008, and June 18, 2008, pursuant to Florida Statutes Section 558.004, the Plaintiffs provided Island Resorts, Association and Yates with written notice of and opportunity to repair the construction defects in their unit. Island Resorts, Association and Yates have failed to respond to any of said written notices and opportunities to repair as required by law.

**COUNT I**

12

**Violation of Florida Building Code Against Adache, Hatch, Island Resorts and
Yates pursuant to Florida Statutes Section 553.84**

56.     The allegations of paragraphs 1 – 55 are realleged and incorporated herein.

57.     Florida Statutes Section 553.84 provides:

Notwithstanding any other remedies available, any person or party, in an
individual capacity or on behalf of a class of persons, damaged as a result
of a violation of this part or the Florida Building Code, has a cause of
action in any court of competent jurisdiction against the person or party
who committed the violation; however, if the person or party obtains the
required building permits and any local government or public agency with
authority to enforce the Florida Building Code approves the plans, if the
construction project passes all required inspections under the code, and if
there is no personal injury or damage to property other than the property
which is the subject of the permits, plans, and inspections, this section
does not apply unless the person or party knew or should have known that
the violation existed.

58.     As referenced in paragraph 53 above, Adache, Hatch, Island Resorts and
Yates violated the Florida Building Code.

59.     As a proximate result of Adache, Hatch, Island Resorts and Yates'
violation of the Florida Building Code, Plaintiffs have suffered damages.   The
condominium has also suffered damages as a result of the defects or deficiencies in the
common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other
relief this Court may deem just and proper.

## COUNT II
### Negligence Against Adache

60.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

61.     Adache, as architect for the subject unit and common elements, had a duty
to use reasonable care to ensure that the design of Plaintiffs' unit and common elements

13

was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

62.     As referenced above, Adache was negligent, through its own conduct, and through the hiring and supervision of others, by failing to use reasonable care to ensure that the design of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

63.     As a proximate result of the negligence of Adache, Plaintiffs have suffered damages.  Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## COUNT III
### Negligence Against Hatch

64.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

65.     Hatch, as engineer for the subject unit and common elements, had a duty to use reasonable care to ensure that the design and engineering of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

14

66.     As referenced above, Hatch was negligent, through its own conduct, and through the hiring and supervision of others, by failing to use reasonable care to ensure that the design and engineering of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

67.     As a proximate result of the negligence of Hatch, Plaintiffs have suffered damages. Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold. The Plaintiffs have been unable to fully enjoy and use the unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished. The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## COUNT IV
### Breach of Warranty Against Adache

68.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

69.     Adache, as architect for the subject unit and common elements, impliedly warranted to the Plaintiffs and the condominium, that each unit and the common elements were designed in accordance with the plans and specifications filed as a matter of public record, the Florida Building Code, and good design and construction practices.

70.     Adache breached the implied warranties mentioned above through the hiring and supervision of others, by failing to use reasonable care to ensure that the

15

design of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

71.    As a proximate result of the Adache's breach of the above mentioned warranties, Plaintiffs have suffered damaged.   Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the Unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## COUNT V
### Breach of Warranty Against Hatch

72.    The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

73.    Hatch, as engineer for the subject unit and common elements, impliedly warranted to the Plaintiffs and the condominium, that each unit and the common elements were designed and engineered in accordance with the plans and specifications filed as a matter of public record, the Florida Building Code, and good design and construction practices.

74.    Hatch breached the implied warranties mentioned above through the hiring and supervision of others, by failing to use reasonable care to ensure that the design and engineering of Plaintiffs' unit and common elements was performed in a

16

workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

75.     As a proximate result of Hatch's breach of the above mentioned warranties, Plaintiffs have suffered damaged.   Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the Unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

### COUNT VI
### Negligence Against Island Resorts and Yates

76.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

77.     Island Resorts and Yates, as contractors for the subject unit and common elements, had a duty to use reasonable care to ensure that the design of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

78.     Also, when Island Resorts and Yates undertook to repair Plaintiffs' unit and the common elements after Plaintiffs discovered the problems with their unit and the common elements they owed a duty of reasonable care to Plaintiffs.

79.     As referenced above, Island Resorts and Yates were negligent, through their own conduct, and through the hiring and supervision of others, by failing to use

17

reasonable care to ensure that the design, construction and repair of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

80.     As a proximate result of the negligence of Island Resorts and Yates, Plaintiffs have suffered damages.  Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## COUNT VII
### Breach of Warranty Against Island Resorts and Yates

81.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

82.     Island Resorts and Yates, as developer and contractors of Plaintiffs' condominium unit and common elements, impliedly warranted to the Plaintiffs that each unit was constructed in accordance with the plans and specifications filed as a matter of public record, the Florida Building Code, other local and national codes, and good design, engineering and construction practices.

83.     Island Resorts and Yates breached the implied warranties mentioned above through their own conduct, and through the hiring and supervision of its subcontractors, by failing to use reasonable care to ensure that the design, construction

and repair of Plaintiffs' unit and common elements was performed in a workmanlike manner, in accordance with the construction drawings, and in compliance with the Florida Building Code.

84.     As a proximate result of the Island Resorts and Yates breaches of the above mentioned warranties, Plaintiffs have suffered damaged.  Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the Unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished. The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## Count VIII
## Violation of Chapter 558 Florida Statutes Against Island Resorts and Yates

85.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

86.     Island Resorts and Yates have repeatedly failed to comply with Chapter 558, Florida Statutes.

87.     As a proximate result of Island Resorts and Yates repeated failure to comply with Chapter 558, Florida Statutes, Plaintiffs have suffered damages.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

WHEREFORE, Plaintiffs demand judgment, interest, trial by jury and any other relief this Court may deem just and proper.

## COUNT IX
### Negligence Against Master and Association

88.     The allegations of paragraphs 1 – 59 are realleged and incorporated herein.

89.     Master and Association had a duty to the Plaintiffs to properly maintain, manage, insure, disburse insurance proceeds, operate, reconstruct and repair condominium property, including the Plaintiffs' property.

90.     The Association is governed by Chapter 718 Florida Statutes and the Declaration of Condominium ("Declaration") and is required to comply with same.

91.     The Declaration provides in relevant part the following:

- Section 4.4.5: "All drainage and stormwater management systems" are common elements.

- Section 4.5.5: "Any balcony, lanai, terrace, porch or patio (and all improvements thereto) as to which direct and exclusive access shall be afforded to any particular unit or units to the exclusion of others" are limited common elements.

- Section 9.1.1: "[the] Association shall maintain, repair and place at the Association's expense:

    9.1.1.1 All portions of the Condominium building contributing to the support of the Condominium building, which portions shall include, but not be limited to, outside walls of the Condominium building and all fixtures on its exterior, those portions of boundary walls not a part of a unit; floor and ceiling slabs, load-bearing columns and load-bearing walls.

    9.1.1.2 All conduits, ducts, plumbing, wiring and other facilities for the furnishing of utility services contained in the Common Elements; and all such facilities contained with a unit that service part, or parts, of the Condominium property other than the unit within which contained.

    9.1.1.3 All incidental damage caused to a unit by such work immediately above-described shall be repaired promptly at the expense of the Association.

    9.1.1.4 All Common Elements of the Condominium.

20

The costs of the aforementioned maintenance shall constitute Common Expenses.

Section 9.1.2.9 The Association shall be solely responsible for insuring any and all portions of the Limited Common    Elements appurtenant to the unit, and to the extent any reconstruction, repair or maintenance is required due to casualties or other cause against which the Limited Common Elements are insured, the unit owners will receive the benefit of any proceeds payable to the Association as appropriate.

Section 9.1.2.10 of the Declaration provides that "maintenance, repair, and replacement obligations relative to attached balconies, which are Limited Common Elements appurtenant to units, individual unit owners shall not be responsible for structural defects or problems, including leaks.   Repairs to balconies of structural defects or problems, including leaks, shall be an Association expense."

- Sections 14 and 15 of the Declaration outline the Association's responsibility with regard to obtaining appropriate insurance coverage, reconstruction or repair after casualty, and disbursement and use of insurance proceeds.

92.     Florida Statutes Section 718.111 specifically provides that Master and Association owe Plaintiffs a fiduciary duty.

93.     Plaintiffs have consistently made demands upon Master and Association to maintain, manage, insure, operate, reconstruct and repair condominium property, including Plaintiffs' property, to no avail.

94.     Master and Association have breached their duty to the Plaintiffs by failing to comply with the Florida Condominium Act and the Declaration by failing to properly maintain, manage, insure, disburse insurance proceeds, operate, reconstruct and repair condominium property, including the Plaintiffs' property and common elements.

21

95.     The Plaintiffs have suffered damages as a proximate result of the Master and Association's negligence.  Water has been able to consistently infiltrate and spread throughout the unit, damaging the unit and causing the unit to be contaminated with toxic and/or destructive mold.  The Plaintiffs have been unable to fully enjoy and use the unit as a vacation home, rent the unit, resell the unit, and the value of the unit has significantly diminished.  The condominium has also suffered damages as a result of the defects or deficiencies in the common elements.

96.     Florida Statutes Section 718.303 specifically provides that Master and Association are required to comply with the Florida Condominium Act and the documents governing the condominium, and a unit owner prevailing in an action against Master and Association such as this action is entitled to recovery of reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs demand judgment, trial by jury, interest, attorney's fees and costs and any other relief this Court may deem just and proper.

Dated this 17th day of September, 2008.

Respectfully submitted,

/s/ DANIEL W. UHLFELDER
DANIEL W. UHLFELDER
Florida Bar No. 133922
Daniel W. Uhlfelder, P.A.
124 E. County Road 30-A
Grayton Beach, FL 32459
Phone: (850) 534-0246
Fax:    (850) 534-0985
Email:  daniel@dwulaw.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record Edward P. Fleming and Raymond P. Oldach, Jr., 25 W. Government Street, Pensacola, FL 32502, Pensacola, FL 32502, George Hatch, Kubicki Draper, 106 E. College Avenue, Suite 1010, Tallahassee, FL 3230 and B.B. Boles III, Young, Bill, Fugett & Roumbus, P.A., Post Office Drawer 1070, Pensacola, FL 32591-1070.

Respectfully submitted,

/s/ DANIEL W. UHLFELDER
DANIEL W. UHLFELDER
Florida Bar No. 133922
Daniel W. Uhlfelder, P.A.
124 E. County Road 30-A
Grayton Beach, FL 32459
Phone: (850) 534-0246
Fax:    (850) 534-0985
Email:  daniel@dwulaw.com

Attorney for Plaintiffs

23